## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERTO ISLAS DURAND, individually, and on behalf of all others similarly situated, | Civil Action No.: |
| | **CLASS ACTION COMPLAINT** |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| IMPERIAL PARKING (U.S.), LLC, | |
| Defendant. | |

Plaintiff Roberto Islas Durand ("Plaintiff") brings this action on behalf of himself, and all others similarly situated against Defendant Imperial Parking (U.S.), LLC ("Impark" or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself, which are based on personal knowledge.

### NATURE OF THE ACTION

1.      This is a class action against Defendant for unlawfully obtaining and using personal information of drivers from their Driver Motor Vehicle records ("DMV records") in violation of the Driver's Privacy Protection Act, 18 U.S.C. § 2721, *et seq.* (the "DPPA").

2.      Defendant is part of "one of the largest parking management networks in North America, operating approximately 3,000 parking facilities with 8,000 employees in more than 500 cities across the U.S. and Canada."[1]

3.      "Impark, through its operating companies … [including] Imperial Parking (U.S.),

---

[1] IMPARK, IMPARK, https://impark.com/ (last accessed Mar. 6, 2025).

LLC, provides parking management services" to businesses nationwide and is currently utilized in several states, including the state of Washington and New York.[2]

4.     Impark's website explains that Impark "is the largest operator of municipal parking systems in the United States and maintains parking management contracts with numerous cities across North America."[3]

5.     Impark further explains "[o]ur strong entrepreneurial drive and dedication to superior service have led us to develop a selection of value-added services that include … enforcement, automated solutions, and revenue control (PARCS)."[4]

6.     As relevant here, Defendant Impark enforces parking payments by utilizing a license plate recognition ("LPR") technology that captures and reads the license plates on vehicles entering and exiting parking facilities managed by Impark.

7.     Impark further explains: "Mobile license plate recognition (LPR) is one of the most effective parking enforcement methods available today. Using a series of cameras, infrared lights, optical character recognition software, and license plate databases, mobile LPR allows patrollers to monitor parking zones at maximum efficiency without having to make multiples stops or exit their vehicle."[5]

8.     Municipal Citation Solutions (MCS), an Impark company, "[which] is a leading provider of fixed and mobile LPR systems and other parking monitoring equipment and

---

[2] IMPARK, FIND YOUR CITY, https://impark.com/find-your-city/.

[3] IMPARK, MUNICIPAL PARKING OPERATIONS, https://impark.com/parking-management-solutions/municipal-operations/ (last accessed Mar. 5, 2025).

[4] IMPARK, ABOUT IMPARK, https://impark.com/about-impark/ (last accessed Mar. 5, 2025).

[5] Jeff Van Allen, *4 Ways to Use Mobile LRP Technology*, IMPARK (Oct. 25, 2018), https://impark.com/parking-insight/4-ways-to-use-mobile-lpr-technology/ (last accessed Mar. 6, 2025).  The author of this article, Jeff Van Allen, "is vice president of Municipal Citation Solutions, an Impark company."  *Id.*

software[,]"[6] provides this technology to Impark.  MCS boasts that it "uses a comprehensive approach to collect on backlogged citations. We have worked with clients that have millions in unpaid citations. We have crafted the system to handle the complex and tedious tasks that are involved with collections."[7]

9.      When Defendant captures a vehicle on the cameras that, according to Defendant, has not properly paid for parking, Defendant, through the use of its license plate recognition technology, accesses the motor vehicle records associated with that license plate to obtain the personal information, including the name and address, of the individual to whom the vehicle is registered to.

10.     Defendant then sends a Statement Letter ("Letter") in the mail to the registered owner's home address informing them that they are required to pay Defendant for the parking.

11.     The Letter states:

> This Statement Letter has been issued by Imperial Parking (U.S.), LLC.  Listed below are certain instances in which your vehicle was parked on private property in contravention of the posted terms and conditions.
>
> The amount on this Statement Letter is a debt owing to Imperial Parking (U.S.), LLC and is set to cover lost revenues as well as the costs of patrol and preliminary collection.  A Notice was placed on your vehicle at the time of the violation but the amount is currently unpaid.  If this amount remains unpaid, it will be referred to a debt collection agency for collection, at which time costs and interest will be added.
>
> The legal authority to claim the amount due and/or have an improperly parked vehicle towed arises under the law of contract.

---

[6] Jeff Van Allen, *How to Control a Gateless Parking Environment*, IMPARK (Jan. 14, 2019), https://impark.com/parking-insight/how-to-control-a-gateless-parking-environment/.

[7] MUNICIPAL CITATION SOLUTIONS, VIOLATION AND TICKETING SYSTEM (VATS), https://www.municipalcitationsolutions.com/vats/ (last accessed Mar. 6, 2025).

12.     The Letter further lays out the Notice Number, Date Issued, Lot Code, Location Address, Time, Type of Violation, Amount Due, and the vehicle license plate number.

13.     Notably, Defendant never seeks to claim the amount due "under the law of contract" and engages in no action aside from sending harassing letters in violation of privacy law.  This is because Impark, just like any other private parking lot operator, has little or no power to force people to pay violation notices which, unlike municipal parking tickets, don't have the same weight of the law behind them.

14.     Defendant mails these Letters to both drivers who never paid for parking, and to drivers who did in fact pay for parking, yet Defendant alleges they still owe payment.

15.     Regardless, both drivers who pay and drivers who do not pay never supply Defendant with their mailing address.  The only way Defendant is able to claim "your vehicle was parked" at one of Defendant's facilities is by utilizing LPR technology and cross-checking your license plate number against your driver motor vehicle records that contain your mailing address. Plaintiff and Class members never consent to this invasion of privacy.

16.     Thus, in blatant disregard of Plaintiff and Class members' privacy rights, and the DPPA, Defendant is illegally obtaining drivers' personal information through their DMV records.  Specifically, Defendant is obtaining their mailing address listed on their DMV record associated with the registered license plate/vehicle.

17.     Defendant's parking facilities do not inform drivers that their personal information will be collected through the use of license plate reading technology and unlawfully obtained through DMV records.

18.     Defendant unlawfully obtains and uses drivers' DMV record information to mail parking citations to both vehicle owners who did not pay for parking, and to vehicle owners that

Defendant accuses of still owing money.

19.     Moreover, the Letters typically inform vehicle owners that they owe Defendant large sums of money in excess of $90, despite the cost of parking being below that amount.

20.     Defendant profits from the illegal use of drivers' personal information obtained through their DMV records by mailing fake parking citations to vehicle owners and threatening them with severe consequences if they do not pay exorbitant sums.

21.     This is evidenced by the large volume of consumer complaints found online.  For example, in a January 24, 2025 complaint posted on Impark's Better Business Bureau page, a driver wrote:

> I used a parking garage in ******* to see a family show with my wife and two kids. As is typical in *******, I visited a payment station on our way back to the car so I had proof of payment and could exit. Instead I found a notice on the vehicle. I had no intention of not paying for parking, I was not trying to get away with anything, and yet in addition to the $7 I paid, I now have a private fine of $98 to pay?? I travelled over two hours to get to ******* for this show, paying for parking is not part of my everyday life, and I thought I was following the rules. Impark phone and online **** have said the fine is valid and I'm now getting letters from a collections agency, less than six months after the notice was issued. It's very hard to believe that a $98 fine is reasonable for a $7 parking spot.[8]

22.     Another complaint posted on January 20, 2025 asserts similar grievances:

> I paid 3h of parking at 11:11 AM, and had a ticket placed on my car at 11:37. I sent screenshots and receipts to impark to dispute the claim on their online form, and was sent a message a week later "Updated Notice status: ********************" I have clear evidence of my payment and they are rejecting it over and over. I try calling and they say to submit it online. Impark is now sending me to collections? How is this legal?[9]

---

[8] BETTER BUSINESS BUREAU, *Impark*, https://www.bbb.org/ca/bc/vancouver/profile/parking-facilities/impark-0037-113660/complaints?page=1&sort=recent.

[9] BETTER BUSINESS BUREAU, *Impark*, https://www.bbb.org/ca/bc/vancouver/profile/parking-facilities/impark-0037-113660/complaints.

23.     Plaintiff and Class members were never informed that their personal information would be obtained by Defendant through their DMV records or otherwise.  Defendant obtains drivers' personal information, including their name and address, from their DMV records without the lawful consent of drivers, and without a lawfully permitted reason under the DPPA.

24.     In doing so, Defendant uses predatory tactics to obtain unlawful payments from drivers.

**A.      The DPPA**

25.     In 1994, Congress enacted the DPPA as a critical measure to protect the personal information of drivers in the United States.  This federal law was designed to address growing concerns about the misuse of personal data collected by state departments of motor vehicles ("DMV").  By regulating the disclosure and use of personal information contained in motor vehicle records, the DPPA ensures that this sensitive data is only accessible for legitimate and specified purposes.  The act's primary goal is to safeguard individuals' privacy and prevent the exploitation of their personal information for purposes such as solicitation, marketing, and identity theft.

26.     Historically, the DPPA was a response to several high-profile incidents where personal information obtained from DMV records was used for harmful purposes, including intimidation and harassment.  The act was championed by Congress as a necessary step to enhance privacy protections in an increasingly data-driven society.  Its passage marked a pivotal moment in the evolution of privacy law in the United States, setting a precedent for subsequent legislation aimed at protecting personal data.

27.     The effect of the DPPA has been profound, establishing a legal framework that mandates strict confidentiality and restricts access to motor vehicle records.  Under the DPPA,

personal information such as names, addresses, and Social Security numbers cannot be disclosed

without the driver's written consent, except for certain permitted uses, such as law enforcement

activities. The act imposes penalties for unauthorized access and misuse of this data, thereby

deterring potential abusers and reinforcing the importance of data privacy. By providing a clear

legal standard, the DPPA aims to reduce the risks associated with the widespread availability of

driver information.

28.     Regrettably, there are still occasions where bad faith actors like Defendant

disregard the DPPA and abuse the personal information contained in DMV records for illicit

purposes. This is one such case. Defendant's entire business model is based on flouting the

DPPA and abusing official motor vehicle data to harass, intimidate, deceive, and ultimately

defraud consumers. This action aims to stop Defendant's unlawful conduct and compensate

consumers whose privacy rights have been blatantly violated.

**B.      Defendant Violates The DPPA**

29.     The DPPA governs the manner by which certain personal information can be

accessed or disclosed through DMV records and imposes penalties for violations of its

provisions.

30.     Section 2724(a) of the DPPA provides that "[a] person who knowingly obtains,

discloses or uses personal information, from a motor vehicle record, for a purpose not permitted

under this chapter shall be liable to the individual to whom the information pertains ..."

31.     Defendant is a "person" within the meaning of 18 U.S.C. 2725(2).

32.     Defendant obtained Plaintiff's and Class members' "Personal Information" as

defined by the DPPA to mean "information that identifies an individual, including an individual's

photograph, social security number, driver identification number, name, address (but not the 5-

digit zip code), telephone number, and medical or disability information, but does not include

information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. § 2725.

33.    A "motor vehicle record" is defined in the DPPA to mean "any record that

pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or

identification card issued by a department of motor vehicles…" *Id*.

34.    DPPA Section 2721(b) provides a set of "permissible uses" of personal

information.  The permissible use exemptions to the DPPA allow the use of such information for

a limited number of purposes designed to promote public welfare.

35.    Defendant did not receive Plaintiff's or Class members' express written consent

prior to accessing their personal information as required by the DPPA, 18 U.S.C. § 2721(b)(12).

The DPPA does not provide a lawful basis for Defendant to obtain said information.

36.    Plaintiff and Class members never waived their rights to privacy under 18 U.S.C.

§ 2721(d).

37.    Defendant's use of official motor vehicle records to obtain the personal

information of Plaintiff and Class members, and send parking citations when applicable, is not

permissible under the DPPA.

38.    Defendant's conduct as set forth above caused Plaintiff and Class members harm,

including violations of their statutory rights, invasion of their privacy, intrusion upon seclusion,

harassment and annoyance.

39.    Accordingly, Plaintiff has standing to bring his claims under the DPPA.  *See*

*Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 922 (4th Cir. 2022) ("At bottom, the DPPA is

aimed squarely at 'the right of the plaintiff, in the phrase coined by Judge Cooley, 'to be let

alone.''") (quoting William L. Prosser, *Privacy*, 48 Calif. L. Rev. 383, 389 (1960)).

**PARTIES**

40.     Plaintiff Roberto Islas Durand is a natural person and resident of Seattle, Washington.  In or around August 4, 2023, Mr. Durand parked at Defendant Impark's Lot #72 parking facility located at 1401 Broadway, Seattle, WA 98122 ("Parking Facility").

41.     Impark says that "[t]his lot is your gateway to Broadway Ave, an area in Seattle with an alternative vibe and home to many bars, nightclubs and restaurants.  This lot has garage parking underneath a QFC grocery store, as well as surface parking above, offering a very convenient one stop shop location."[10]



---

[10] IMPARK, HARVARD MARKET - LOT #72, https://lots.impark.com//imp/en?latlng=47.6062095,-122.3320708#details=25,72 (last accessed Mar. 6, 2025).



42.     In or around February 26, 2024, Mr. Durand received the following Letter in the mail at his home address from Defendant[11]:

//

//

//

//

//

//

//

---

[11] Plaintiff's mailing address and license plate number have been redacted from the Letter.



43.    Defendant sent the Letter to Plaintiff's address listed on the DMV records, including the mailing address listed on his DMV records associated with the registered license plate/vehicle.

44.    Upon visiting the URL listed on the Letter and inputting the relevant information,

Plaintiff was brought to following payment screen:



45.     Defendant Imperial Parking (U.S.), LLC is a Delaware limited liability company with its principal place of business located at 307 7th Avenue, Suite 301, New York, NY 10001. Defendant operates parking facilities throughout the United States, including in New York City.[12]

## JURISDICTION AND VENUE

46.     This Court has original subject matter jurisdiction over this action pursuant to 18 U.S.C. § 2724(a) and 28 U.S.C. § 1331 because the claims asserted arise from a federal statute.

47.     This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District, and Defendant regularly transacts business within

---

[12] This information was obtained through Defendant Impark's interactive "Lot Search" map feature, where a website visitor can see all Impark parking locations worldwide.   *See* IMPARK, LOT SEARCH, https://lots.impark.com/IMP/EN?latlng=47.6062095,-122.3320708&zoom=14 (last accessed Mar. 5, 2025).

this District and operates several parking garages and/or parking lots in this District.

48.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendant maintains its principal place of business in this District.

49.     Plaintiffs and Class members never waived their rights to privacy under 18 U.S.C. § 2721(d).

## CLASS ALLEGATIONS

50.     **Class Definition:**  Plaintiff brings this action on behalf of himself, and all other persons similarly situated, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3). The proposed Class is defined as follows: All natural persons in the United States whose Personal Information, as defined by the DPPA, was obtained, used and/or disclosed by Defendant, and/or any of their agents, in the four years preceding the filing of the Complaint, through the date of any order granting certification of the class.

51.     Expressly excluded from the Class are:

(a)     Any Judge or Magistrate Judge presiding over this action and members of their immediate families;

(b)     Defendant and any entity in which Defendant has a controlling interest, or which has a controlling interest in Defendant, and their legal representatives, assigns and successors; and

(c)     All persons who properly execute and file a timely request for exclusion from the Class.

52.     **Numerosity:**  The number of persons within the Class is substantial, believed to amount to thousands of persons.  It is, therefore, impractical to join each member of the Class as a named Plaintiff.  Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical.  Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits

of this litigation.  Moreover, the Class is ascertainable and identifiable from Defendant's records.

53.    **Commonality and Predominance:**  There are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to, the following:

(a)    Whether Defendant's parking notice is uniform in all relevant aspects for the Class;

(b)    Whether Defendant had any permissible purpose within the meaning of the DPPA when they obtained the Personal Information of Plaintiff and the Class;

(c)    Whether Defendant obtained, disclosed, or used the Personal Information of Plaintiff and the Class in violation of the DPPA and are therefore liable to Plaintiff and the Class;

(d)    Whether Plaintiff is entitled to a judicial determination that Defendant's actions violate the DPPA;

(e)    Whether Defendant's systematic conduct was willful or in reckless disregard of the law, warranting the award of punitive damages against Defendant and in favor of Plaintiff and the Class, as provided by the DPPA; and

(f)    Whether Plaintiff and the members of the Class have sustained damages and, if so, the proper measure of such damages.

54.    **Adequate Representation:**  Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiff and his counsel are committed to vigorously prosecuting this class action.  Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of such a Class. Neither Plaintiff nor his counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Classes.  Plaintiff has raised viable statutory claims or the type

14

reasonably expected to be raised by members of the Class, and will vigorously pursue those

claims.  If necessary, Plaintiff may seek leave of this Court to amend this Class Action

Complaint to include additional Class representatives to represent the Class, additional claims as

may be appropriate, or to amend the Class definition to address any steps that Defendant took.

55.     **Superiority:**  A class action is superior to other available methods for the fair and

efficient adjudication of this controversy because individual litigation of the claims of all Class

members is impracticable.  Even if every member of the Class could afford to pursue individual

litigation, the Court system could not.  It would be unduly burdensome to the courts in which

individual litigation of numerous cases would proceed. Individualized litigation would also

present the potential for varying, inconsistent or contradictory judgments, and would magnify the

delay and expense to all parties and to the court system resulting from multiple trials of the same

factual issues.  By contrast, the maintenance of this action as a class action, with respect to some

or all of the issues presented herein, presents few management difficulties, conserves the

resources of the parties and of the court system and protects the rights of each member of the

Class.  Plaintiff anticipates no difficulty in the management of this action as a class action.

Class-wide relief is essential to compliance with the DPPA.


## COUNT I
### Violation of the Driver's Privacy Protection Act
### 18 U.S.C. § 2721, *et seq.*
### (DPPA Class).

56.     Plaintiff repeats and re-allege the allegations set forth in paragraphs 1-55, as if set

forth fully herein.

57.     The DPPA, 18 U.S.C. § 2722 makes it "unlawful for any person knowingly to

obtain or disclose personal information, from a motor vehicle record, for any use not permitted

under Section 2721(b)" of the DPPA.

58.    The DPPA, 18 U.S.C. § 2724(a) provides that a "person who knowingly obtains,

discloses or uses personal information, from a motor vehicle record, for a purpose not

permitted under this chapter shall be liable to the individual to whom the information

pertains…"

59.    Defendant knowingly obtained, disclosed and used personal information from a

motor vehicle record in order to track who utilizes its parking facilities and to send Plaintiff

and Class members an illegal parking citation, which is not a permissible purpose under the

DPPA.

60.    Upon information and belief, Defendant acted with respect to Plaintiff and Class

members in willful, or at the very least, reckless disregard of the law in that Defendant knew it

was unlawful to access, disclose, obtain and/or use Plaintiff and Class members' personal

information from non-public motor vehicle records in violation of the DPPA.

61.    Plaintiff and Class members did not provide Defendant with any form of consent

to access their personal information from their driver motor vehicle records.

62.    Plaintiff and Class members were harmed by Defendant's conduct in that

Defendant violated Plaintiff and Class members right to privacy and statutory rights.

63.    On behalf of himself and Class members, Plaintiff seeks: (i) declaratory relief; (ii)

injunctive relief and equitable relief as is necessary to protect the interests of Plaintiff and

Class members by requiring Defendant to comply with DPPA and/or seize their current

practices; (iii) statutory damages of $2,500 per violation of the DPPA pursuant to 18 U.S.C. §

2724(b) of the DPPA; and (iv) reasonable attorneys' fees and costs and other litigation

expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks a judgement against Defendant, individually and on behalf

of all others similarly situated, as follows:

    (a)    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as the Class representative, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

    (b)    For an order declaring that Defendant's conduct violates the DPPA, as reference herein;

    (c)    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

    (d)    An award of statutory damages equal to actual damages, but not less than liquidated damages in the amount of $2,500;

    (e)    Punitive damages upon proof of willful or reckless disregard of the law;

    (f)    For an order permanently enjoining Defendant from further violating the DPPA;

    (g)    For an order awarding Plaintiff and Class members their reasonable attorneys' fees and expenses.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff demands a trial by jury on all claims so

triable.

Date: March 6, 2025                          Respectfully submitted,

                                             **BURSOR & FISHER, P.A.**

                                             By: /s/ *Philip L. Fraietta*
                                                  Philip L. Fraietta

                                             Philip L. Fraietta
                                             Caroline C. Donovan
                                             1330 Avenue of the Americas
                                             New York, NY 10019
                                             Telephone: (646) 837-7150
                                             Facsimile: (212) 989-9163
                                             E-mail: pfraietta@bursor.com
                                                      cdonovan@bursor.com


                                             *Attorneys for Plaintiff*