USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/23/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERTO ISLAS DURAND, individually, and on behalf of all others similarly situated,

Plaintiff,

-against-

IMPERIAL PARKING (U.S.), LLC,

Defendant.

25-CV-01887 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Plaintiff Roberto Islas Durand brings this action on behalf of himself and all others similarly situated, against Defendant Imperial Parking (U.S.), LLC. Plaintiff alleges that Defendant unlawfully obtains and uses personal information of drivers in violation of the Driver's Privacy Protection Act, 18 U.S.C. § 2721, *et seq.* (the "DPPA"). Defendant moves to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of standing and 12(b)(6) for failure to state a claim. For the reasons set forth below, Defendant's motion is GRANTED.

## BACKGROUND

## I. RELEVANT FACTS

### A. The Driver's Privacy Protection Act

Enacted in 1994, the DPPA "establishes a regulatory scheme that restricts the States' ability to disclose a driver's personal information without the driver's consent." *Maracich v. Spears*, 570 U.S. 48, 57 (2013). The DPPA provides, in relevant part, that a state department of motor vehicles "shall not knowingly disclose or otherwise make available to any person or entity . . . personal information." 18 U.S.C. § 2721(a). The statute defines "personal information" as

"information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." *Id.* § 2725(3). Under the DPPA, it is unlawful "for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under" the statute. *Id.* § 2722(a). Identifying fourteen "permissible uses," *see id.* § 2721(b), the DPPA creates a private right of action for "the individual" whose personal information was "knowingly obtain[ed], disclose[d] or use[d] . . . for a purpose not permitted under" the statute, *id.* § 2724(a).

**B. Plaintiff's Allegations**[1]

Defendant Imperial Parking (U.S.), LLC is "one of the largest parking management networks in North America, operating approximately 3,000 parking facilities . . . across the U.S. and Canada." Dkt. No. 1 ("Compl.") ¶ 2. To enforce parking payments, Defendant utilizes license plate recognition ("LPR") technology that captures and reads the license plates of vehicles that enter and exit its facilities. *Id.* ¶ 6. Defendant touts mobile LPR as "one of the most effective parking enforcement methods available today," allowing patrollers to "monitor parking zones at maximum efficiency without having to make multiples stops or exit their vehicle." *Id.* ¶ 7.

When Defendant identifies a vehicle that has not properly paid for parking, Defendant uses LPR to "access[] the motor vehicle records associated with that license plate to obtain the

[1] The following facts are taken from the Complaint, Dkt. No. 1, and are assumed true for the purpose of resolving the motion to dismiss. The Court shall refer to the parties' memoranda of law in support of and in opposition to the motion to dismiss as follows: Dkt. No. 13 ("Mot."); Dkt. No. 19 ("Opp."); and Dkt. No. 20 ("Reply").

personal information . . . of the individual to whom the vehicle is registered." *Id.* ¶ 9. Defendant then mails a Statement Letter (the "Letter") to the address on file with the relevant vehicle registration authority. *Id.* ¶ 10. The Letter states, in relevant part:

> This Statement Letter has been issued by Imperial Parking (U.S.), LLC. Listed below are certain instances in which your vehicle was parked on private property in contravention of the posted terms and conditions.
>
> The amount on this Statement Letter is a debt owing to Imperial Parking (U.S.), LLC and is set to cover lost revenues as well as the costs of patrol and preliminary collection. A Notice was placed on your vehicle at the time of the violation but the amount is currently unpaid. If this amount remains unpaid, it will be referred to a debt collection agency for collection, at which time costs and interest will be added.
>
> The legal authority to claim the amount due and/or have an improperly parked vehicle towed arises under the law of contract.

*Id.* ¶ 11; *see also id.* ¶ 12 ("The Letter further lays out the Notice Number, Date Issued, Lot Code, Location Address, Time, Type of Violation, Amount Due, and the vehicle license plate number."). According to Plaintiff, Defendant mails the Letters "to both drivers who never paid for parking, and to drivers who did in fact pay for parking," *id.* ¶ 14, "in blatant disregard of Plaintiff and Class members' privacy rights," *id.* ¶ 16. Defendant does not inform drivers at the time they park in a Defendant-controlled parking area that their personal information will be collected using LPR through their Driver Motor Vehicle ("DMV") records, *id.* ¶¶ 17, 23, nor obtain drivers' consent to do the same, *id.* ¶¶ 23, 35.

On August 4, 2023, Plaintiff parked at one of Defendant's parking facilities in Seattle, Washington. *Id.* ¶ 40. Several months later, Plaintiff received Defendant's Letter described above in the mail at his home address. *Id.* ¶ 42 (listing $93.00 as the "amount due").

## II. PROCEDURAL HISTORY

Plaintiff filed this action on March 6, 2025, and brings a single claim for violation of the DPPA. *Id.* ¶¶ 56–63. The Complaint pleads various injuries stemming from Defendant's

conduct, including "violations of [Plaintiff's and the putative class members'] statutory rights, invasion of their privacy, intrusion upon seclusion, harassment and annoyance," *id.* ¶ 38, and seeks, *inter alia*, declaratory relief, injunctive relief, and statutory damages, *id.* ¶¶ 62–63.

Defendant moved to dismiss for lack of standing and for failure to state a claim. Dkt. No. 12. Plaintiff opposed the motion, Dkt. No. 19, and it is now fully briefed and before the Court for decision.

## DISCUSSION

Defendant moves to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *See generally* Dkt. No. 13. Defendant argues that Plaintiff (1) does not have standing because he has not adequately pled an injury in fact, *see* Mot. at 3–9, and (2) has not stated a claim under the DPPA because the State of Washington permits disclosure of names and mailing addresses to commercial parking lots, *see id.* at 9–10. Because Plaintiff lacks constitutional standing, the Court dismisses Plaintiff's claim under Rule 12(b)(1), and need not consider whether Plaintiff has stated a claim for relief under Rule 12(b)(6).

## I. LEGAL STANDARD ON A MOTION TO DISMISS UNDER RULE 12(B)(1)

A district court must dismiss a claim under Rule 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l*, 790 F.3d 411, 417 (2d Cir. 2015)..[2] To establish standing, a plaintiff must show: "(1) an injury in fact (*i.e.*, a concrete and particularized invasion of a legally protected interest); (2) causation (*i.e.*, a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant);

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

and (3) redressability (*i.e.*, it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit)." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273–74 (2008). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "[A]t the pleading stage, standing allegations need not be crafted with precise detail, nor must the plaintiff prove his allegations of injury." *Baur v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003). To survive a motion to dismiss for lack of standing, a plaintiff need only "allege facts that affirmatively and plausibly suggest that it has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).

To support standing, an injury must be "concrete," meaning that it must be "real, and not abstract." *Soule v. Conn. Ass'n of Schs., Inc.*, 90 F.4th 34, 45 (2d Cir. 2023) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)). Certain harms "readily qualify as concrete injuries under Article III," including "traditional tangible harms, such as physical harms and monetary harms." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). The Supreme Court has rejected the proposition that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation [for which there is a private right of action]." *Spokeo*, 578 U.S. at 341; *see also TransUnion*, 594 U.S. at 426.

To assess whether a harm is a concrete injury in fact for purposes of Article III standing, "courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* at 424. While the asserted injury must have "a close historical or common-law analogue," the

analogue need not be an "exact duplicate in American history and tradition," *id.*, and a plaintiff need not "plead every element of a common-law analog to satisfy the concreteness requirement." *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 542 n.6 (2d Cir. 2024). But "where a key element of the analogous common-law or historical harm is missing, the plaintiff lacks standing." *Gabrielli v. Insider, Inc.*, No. 24-CV-01566 (ER), 2025 WL 522515, at *4 (S.D.N.Y. Feb. 18, 2025).

## II. PLAINTIFF HAS FAILED TO ESTABLISH STANDING

Plaintiff pleads three types of injury: (1) a violation of his statutory rights, (2) a violation of his privacy rights, and (3) harassment and annoyance. Compl. ¶ 38. Defendant argues that none of these alleged injuries are sufficient to confer standing, warranting dismissal. *See* Mot. at 3–9. The Court addresses each of Plaintiff's alleged injuries in turn..[3]

### A. Violation of Statutory Rights

A statutory violation, standing alone, does not constitute injury-in-fact. *See TransUnion*, 594 U.S. at 426; *see also Cantinieri v. Verisk Analytics, Inc.*, No. 2:21-CV-06911 (NJC) (JMW), 2024 WL 5202579, at *11 (E.D.N.Y. Dec. 23, 2024) ("[T]he alleged violation of the DPPA does not automatically constitute an injury in fact for Article III standing."). Plaintiff cannot establish standing for his DPPA claim simply by pleading a statutory violation. Congress can legislate private rights of action, but it cannot legislate around the Constitution. Irrespective of the alleged statutory violation, a concrete injury is still required to meet the Article III requirement of standing.

[3] A plaintiff must "demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). Plaintiff seeks declaratory relief, injunctive relief, and statutory damages for his DPPA claim. Compl. ¶ 63. Because Plaintiff has failed to adequately plead that <u>any</u> of his alleged injuries constitute injuries in fact sufficient to establish Article III standing, that failure is fatal to each of these forms of requested relief.

**B. Violation of Privacy Rights**

Plaintiff contends he pleads a cognizable injury in fact analogous to the harm to personal privacy protected by the common law tort of intrusion upon seclusion. *See* Opp. at 3–5; *see also* Compl. ¶¶ 38–39. According to Plaintiff, "it is Defendant's obtainment of the DMV records itself—'the intrusion upon private records' that is recognized under a claim for intrusion upon seclusion." Opp. at 7.

Harms analogous to those underlying the tort of intrusion upon seclusion may be concrete for purposes of Article III standing. *See TransUnion*, 594 U.S. at 425 (citing *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.) ("The common law has long recognized actions at law against defendants who invaded the private solitude of another by committing the tort of intrusion upon seclusion.")).

The Restatement (Second) of Torts defines intrusion upon seclusion as follows: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652B (1977); *see also Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 93 (2d Cir. 2019) (citing § 652B in support of Article III standing analysis). The comments to this section explain that liability depends not "upon any publicity given to the person whose interest is invaded or to his affairs," but rather on "[t]he intrusion itself." Restatement (Second) of Torts § 652B cmts. a, b. The tort covers intrusion upon private records but not "the examination of a public record concerning the plaintiff, or of documents that the plaintiff is required to keep and make available for public inspection." *Id.* § 652B cmt. c. The interference with the plaintiff's seclusion must be "substantial," *id.* § 652B cmt. d, and the tort is "aimed at a violation or invasion into matters that

a person would deem deeply private, personal, and confidential." *Gabrielli v. Insider, Inc.*, No. 24-CV-01566 (ER), 2025 WL 522515, at *6 (S.D.N.Y. Feb. 18, 2025).

Defendant acknowledges that Plaintiff can establish standing through an injury analogous to one actionable under the tort of intrusion upon seclusion, but argues that "under these facts, and this situation," the Complaint fails to plead an invasion of privacy sufficient to confer standing. Reply at 2; *see also id.* at 6 ("Plaintiff has not pled anything beyond mere access of DMV records in order to send a 'statement letter.'").

The Court finds that Plaintiff's alleged privacy injury, as pled, does not bear a sufficiently "close relationship" to the common law tort of intrusion upon seclusion. Plaintiff does not allege that Defendant's use of DMV records to send a debt collection letter, for a debt incurred by driving and parking that DMV-registered vehicle in a commercial parking lot, was an "intrusion . . . highly offensive to a reasonable person," as is required to state a claim for intrusion upon seclusion. Restatement (Second) of Torts § 652B; *see also Spitz v. Caine & Weiner Co.*, No. 23-CV-07853 (PKC) (CLP), 2024 WL 69089, at *5 n.5 (E.D.N.Y. Jan. 5, 2024).

*Am. Fed'n of Gov't Emps., AFL-CIO v. U.S. Off. of Pers. Mgmt.*, 777 F. Supp. 3d 253 (S.D.N.Y. 2025), a case Plaintiff cites in support of his position, illustrates the deficiency of the showing here. There, federal government employees and their unions sued the U.S. Office of Personnel Management and other defendants for breaches of privacy. *Id.* at 262. The records at issue contained information about the "deeply private affairs of the plaintiffs," including "social security numbers, health history, financial disclosures, and information about family members." *Id.* at 268. The court concluded that such an "intrusion upon the individual plaintiffs' private affairs and confidential information was a substantial invasion of their privacy and would be highly offensive to a reasonable person." *Id.* Here, by contrast, Plaintiff does not plead any facts

that Defendant's intrusion was a "substantial invasion . . . highly offensive to a reasonable person," *id.*, nor cite any authority for the proposition that receipt of a single debt collection letter, sent to the address where the recipient registered the subject vehicle, rises to a "highly offensive" level. *See Pucillo v. Nat'l Credit Sys., Inc.*, 66 F.4th 634, 640 (7th Cir. 2023) (intrusion upon seclusion "requires a particular kind of offensive intrusion"); *see also Baptiste v. Midland Credit Mgmt., Inc.*, No. 24-CV-05543 (BMC), 2024 WL 3938029, at *2 (E.D.N.Y. Aug. 26, 2024) ("Improper communications can form the basis for an intrusion upon seclusion claim, but only if the communications are highly offensive to a reasonable person."). While Plaintiff is not required to plead every element of a common-law analogue to satisfy the concreteness requirement, "where a key element of the analogous common-law or historical harm is missing, the plaintiff lacks standing." *Gabrielli v. Insider, Inc.*, No. 24-CV-01566 (ER), 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025); *see also Ciccone v. Cavalry Portfolio Servs., LLC*, No. 21-CV-02428 (JS) (JMW), 2021 WL 5591725, at *4 (E.D.N.Y. Nov. 29, 2021).

Plaintiff's arguments to the contrary are unavailing. First, while it is true that some other federal courts "have held that an alleged violation of the DPPA can constitute an injury-in-fact because of the intrusion on personal privacy," *In re GEICO Customer Data Breach Litig.*, No. 21-CV-02210 (KAM) (SJB), 2023 WL 4778646, at *11 (E.D.N.Y. July 21, 2023), the plaintiffs in the cases cited by Plaintiff invoked and analogized their injuries to a different common-law analogue, namely, the tort of public disclosure of private information. *See, e.g.*, *id.* at *10–11; *Rand v. Travelers Indem. Co.*, 637 F. Supp. 3d 55, 66 (S.D.N.Y. 2022); *In re USAA Data Sec. Litig.*, 621 F. Supp. 3d 454, 465 (S.D.N.Y. 2022)..[4] That is because those cases dealt with very

[4] *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533 (2d Cir. 2024), does not help Plaintiff for a similar reason. In *Salazar*, the Second Circuit held that the plaintiff's alleged harm was "closely related to the public disclosure of private facts analog," and expressly stated that it "need not examine whether it

different facts involving data breaches where the alleged harm was disclosure of private information to cybercriminals. *See, e.g.*, *In re GEICO Customer Data Breach Litig.*, 2023 WL 4778646, at *1–2 (plaintiffs' personal information was disclosed to cybercriminals who used that information to fraudulently file unemployment claims, make fraudulent card charges, and fraudulently open bank accounts); *Rand*, 637 F. Supp. 3d at 62 (defendant disclosed plaintiff's personal identifying information to non-party cybercriminals); *In re USAA Data Sec. Litig.*, 621 F. Supp. 3d at 461 (same). Intrusion upon seclusion, by contrast, concerns situations where the intrusion into one's private life is the harm itself. *See Mills v. Saks.com LLC*, No. 23-CV-10638 (ER), 2025 WL 34828, at *4–5 (S.D.N.Y. Jan. 6, 2025) (unlike public disclosure of private facts, certain substantial invasions into one's privacy can be held "comparable to common-law intrusion on seclusion . . . regardless of whether [that information is] disseminated elsewhere"); *see also Caro v. Weintraub*, 618 F.3d 94, 101 (2d Cir. 2010) (intrusion upon seclusion "is a tort that occurs through the act of interception itself").

Second, Plaintiff's reliance on *Garey v. James S. Farrin, P.C.*, 35 F.4th 917 (4th Cir. 2022), a non-binding, out-of-circuit case, is misplaced. *See* Opp. at 6–8. Plaintiffs in *Garey* sued a number of personal injury lawyers for violating the DPPA by obtaining car accident reports which included the plaintiffs' names and addresses, and using that information to mail unsolicited attorney advertising materials. 35 F.4th at 919–20. In concluding that plaintiffs "alleged a legally cognizable privacy injury," the Fourth Circuit analogized the asserted injury to receiving unwanted telemarketing calls under the Telephone Consumer Protection Act. *Id.* at 921–22 (citing *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 652–54 (4th Cir. 2019)); *see*

---

is closely related to the other analog the district court identifie[d]: the 'intrusion upon seclusion' tort." *Id.* at 541 n.5.

*also Baysal v. Midvale Indem. Co.*, 78 F.4th 976, 980 (7th Cir. 2023) (analogizing *Garey* to "junkfax and robocall cases"). Here, by contrast, Defendant's single letter to Plaintiff's home address (the address where he had registered his vehicle) was sent for the purpose of collecting an outstanding debt directly related to the operation of that vehicle in a commercial parking area, not to engage in unsolicited marketing and advertising, nor to do so based on information derived from police accident reports..[5]

Congress's judgment in enacting the DPPA is consistent with the conclusion that Plaintiff's injury as alleged is not an injury in fact. *See Spokeo*, 578 U.S. at 341 ("[B]ecause Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important."). The enactment of the DPPA "responded to at least two concerns over the personal information contained in state motor vehicle records." *Maracich v. Spears*, 570 U.S. 48, 57 (2013). The first concern was a "growing threat from stalkers and criminals who could acquire personal information from state DMVs,"

[5] Defendant submitted a notice of supplemental authority regarding *Stegmeyer v. ABM Indus. Inc.*, No. 24-CV-00394, 2026 WL 879588 (N.D. Ill. Mar. 30, 2026). Dkt. No. 35. While the Court does not rely on this non-binding, out-of-circuit decision to reach its ultimate conclusion that Plaintiff lacks standing, the Court finds *Stegmeyer*'s reasoning persuasive. There, plaintiffs brought a putative class action in connection with parking bills received in the mail and via text message. *Stegmeyer*, 2026 WL 879588, at *1. The plaintiffs alleged that defendants had obtained their personal information from nonpublic DMV records in violation of the DPPA. *Id.* Defendants moved to dismiss for lack of standing, and the district court granted the motion. *Id.*

The court held that "disclosure and use of home addresses alone does not automatically grant standing"; rather, "disclosure of home addresses *may* constitute an intrusion upon seclusion where, for instance, that information is used 'to send unsolicited ads . . . as in junkfax and robocall cases.'" *Id.* at *4 (quoting *Baysal*, 78 F.4th at 980). In considering whether disclosure of names and home addresses constitutes an injury analogous to intrusion upon seclusion, the court noted that its analysis did not "rely on the *type* of personal information alone—specifically, names and home addresses—but *how* that information was used—namely, to collect unpaid debts." *Id.* (emphases in original). The court rejected the plaintiffs' analogy to intrusion upon seclusion because names and home addresses are "neutral facts derived from a public records system and not unique personal identifiers like Social Security numbers," and because "receiving letters in the mail for unpaid bills would not be highly offensive to a reasonable person." *Id.*

while the second related to "States' common practice of selling personal information to businesses engaged in direct marketing and solicitation." *Id.* "Where, as here, Plaintiff[] ha[s] not alleged that [Defendant's] possession of [his] personal information threatens [his] individual safety, the first concern is not at issue." *Stegmeyer*, 2026 WL 879588, at *5. And the second concern is likewise not implicated because "receiving communications for unpaid bills is not analogous to receiving unsolicited advertisements." *Id.* Accordingly, Congress's judgment reinforces the view that Plaintiff lacks standing.

Plaintiff's "core alleged harm"—the unlawful obtainment of his name and the address where he registered his vehicle by Defendant, for the purpose of billing him for unpaid parking fees incurred when that registered vehicle was driven into a com mercial parking area, in purported violation of the DPPA—lacks a "close relationship" to a harm "traditionally recognized as providing a basis for a lawsuit in American courts." *Salazar*, 118 F.4th at 537. This injury therefore fails to satisfy Article III standing's concreteness requirement.

**C. Harassment and Annoyance**

Finally, Plaintiff alleges Defendant caused harm in the form of "harassment and annoyance." Compl. ¶ 38; *see also id.* ¶ 13 ("Defendant . . . engages in no action aside from sending harassing letters in violation of privacy law."). But Plaintiff has "not pled facts demonstrating that [Defendant's] letters were so offensive, like communications repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, or unsolicited marketing communications." *Baptiste*, 2024 WL 3938029, at *2. Plaintiff's allegations of harassment and annoyance from "one debt collection letter without further materialization does not equate to the concrete harm needed to confer standing." *Lodhi v. JHPDE Fin. 1, LLC*, No.

22-CV-05434 (JMA) (JMW), 2022 WL 17363935, at *2 n.3 (E.D.N.Y. Oct. 21, 2022); *see also* *Pucillo*, 66 F.4th at 640..[6]

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, Dkt. No. 12, is GRANTED, and the complaint is dismissed. The Clerk of Court is respectfully directed to enter judgment in favor of Defendant and CLOSE this case.

Dated: September 23, 2026
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge

[6] The Court also notes that Plaintiff's opposition fails to address Defendant's arguments on whether Plaintiff's allegations of harassment and annoyance are sufficient to establish an injury in fact. Accordingly, even if Plaintiff's position were meritorious, the Court would find that Plaintiff's "failure to provide argument on [this] point at issue constitutes abandonment of the issue." *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 907 n.11 (S.D.N.Y. 1997), *aff'd*, 130 F.3d 1101 (2d Cir. 1997); *see also* *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 468 (S.D.N.Y. 2011).